United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DEANNA HERNANDEZ, <br><br> Plaintiff, <br><br> v. <br><br> SAN GABRIEL TEMPORARY STAFFING SERVICES, LLC, <br><br> Defendant. | Case No. 17-CV-05847-LHK <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AS TO PLAINTIFF'S INDIVIDUAL BACKGROUND CHECK-RELATED CLAIMS; GRANTING DEFENDANT'S REQUEST TO STRIKE PLAINTIFF'S BACKGROUND CHECK-RELATED CLASS CLAIMS; AND STAYING REMAINDER OF ACTION PENDING THE UNITED STATES SUPREME COURT'S DECISION IN *ERNST & YOUNG LLP V. MORRIS*** <br><br> Re: Dkt. No. 13 |

Plaintiff Deanna Hernandez ("Plaintiff") brings a class action lawsuit against Defendant San Gabriel Temporary Staffing Services, LLC ("Defendant") that asserts causes of action arising out of (1) the background checks that Defendant allegedly conducts on "prospective, current and former employees," ECF No. 23 ¶ 2; and (2) an assortment of alleged wage and hour violations

1

under California law by Defendant. *Id.* ¶ 4. Before the Court is Defendant's motion to compel arbitration. ECF No. 13 ("Mot."). Defendant requests that the Court compel arbitration of all individual claims brought by Plaintiff, strike all of Plaintiff's class claims, and stay the case pending arbitration. *See id.* Having considered the submissions of the parties, the relevant law, and the record in this case, the Court (1) GRANTS Defendant's motion to compel arbitration of Plaintiff's individual background check-related claims; (2) GRANTS Defendant's request to dismiss without prejudice Plaintiff's background check-related class claims; and (3) STAYS the remainder of Plaintiff's action pending the United States Supreme Court's resolution of *Ernst & Young LLP v. Morris*.

## I. BACKGROUND

### A. Factual Background

On December 14, 2016, Plaintiff signed an "At-Will Employment Agreement" ("Agreement") with Defendant. *See* ECF No. 13-1 at 6–11 ("Agreement"). Section 8 of the Agreement contains both (1) a choice-of-law provision selecting the "Governing Law" of the Agreement; and (2) an arbitration provision. In its entirety, section 8 of the Agreement reads as follows:

> **<u>Governing Law; Arbitration.</u>** This Agreement shall be governed by the laws of the State of California, without regard to that state's conflict-of-laws rules. Any dispute that arises out of or relates to Employee's employment by [Defendant], and that cannot be resolved independently by [Defendant] and Employee, shall be resolved through binding arbitration conducted by JAMS in accordance with such employment arbitration rules or other rules as ensure that the arbitration proceeds subject to the following requirements: (a) before a single, neutral arbitrator; (b) with discovery to the same extent as is allowed under the California Code of Civil Procedure; (c) with a final decision in the form of a detailed, reasoned, opinion sufficient to enable judicial review; (d) with no limitation on the type of relief available under the laws relating to any claim advanced in the arbitration; (e) that the Company be solely responsible for all types of costs associated with the arbitration that the Employee would not have to pay if proceeding in court, including all arbitrator fees, case-management fees, and other expenses necessary to

provide the arbitral forum; and (f) to the greatest extent allowed by applicable law, the Employee has the same appellate rights as the employee would have if the arbitrated claim had been brought in the state or federal courts located within California. Except as otherwise noted in this Agreement, this arbitration provision applies to all claims whatsoever arising in connection with Employee's employment with [Defendant], including claims arising under the Age Discrimination in Employment Act; the Family and Medical Leave Act; the Worker Adjustment and Retraining Notification Act; Title VII of the Civil Rights Act of 1964, or any other state or federal anti-discrimination laws; the Americans with Disabilities Act; the Employee Retirement Income Security Act; the Equal Pay Act of 1963; the California Fair Employment and Housing Act; the California Business and Professions Code; the California WARN Act; the California Labor Code; and/or any other local city, county, state or federal statutes, laws, regulations, or ordinances.

Agreement § 8.

Also on December 14, 2016, Plaintiff signed a "Consumer Report & Investigative Consumer Report Authorization" ("Authorization") indicating that Plaintiff authorized Defendant to obtain "'consumer reports' and/or 'investigative consumer reports' about [Plaintiff] from a 'consumer reporting agency,'" as well as a "criminal background check" and a "motor vehicle report" about Plaintiff. ECF No. 24-2 at 2. The Authorization also purported to authorize Defendant to consider these reports "when making decisions regarding [Plaintiff's] employment or prospective employment with [Defendant]." *Id.* However, Plaintiff alleges that Defendant "failed to provide Plaintiff with the necessary disclosures and summary of rights" before procuring or requesting these background check reports. ECF No. 23 ¶ 22.

Further, Plaintiff alleges that when she was employed by Defendant, Defendant committed a number of wage and hour violations against Plaintiff and other employees. Specifically, Plaintiff alleges that Defendant (1) "failed to provide her and all other similarly situated individuals with meal periods"; (2) "failed to provide them with rest periods"; (3) "failed to pay premium wages for missed meal and/or rest periods"; (4) "failed to pay them for all hours worked"; (5) "failed to reimburse them for all necessary business expenses"; (6) "failed to provide

3

Case No. 17-CV-05847-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AS TO PLAINTIFF'S INDIVIDUAL BACKGROUND CHECK-RELATED CLAIMS; GRANTING DEFENDANT'S REQUEST TO STRIKE PLAINTIFF'S BACKGROUND CHECK-RELATED CLASS CLAIMS; AND STAYING REMAINDER OF ACTION PENDING THE UNITED STATES SUPREME COURT'S DECISION IN *ERNST & YOUNG LLP V. MORRIS*

them with accurate written wage statements"; and (7) "failed to timely pay them all of their final wages following separation of employment." *Id.* ¶ 4.

**B. Procedural History**

Plaintiff filed a class action complaint against Defendant in the Superior Court for the County of Santa Clara on September 6, 2017. *See* ECF No. 23 Ex. 1 ("Compl."). Plaintiff's complaint asserts twelve causes of action against Defendant on behalf of four putative classes and six putative sub-classes. *See id.* Plaintiff's first four causes of action are related to the background checks that Defendant allegedly conducts on "prospective, current and former employees." *Id.* ¶ 2. Specifically, Plaintiff's first four causes of action are for: (1) "failure to make proper disclosure" in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(2)(A), *id.* at 10; (2) "failure to give proper summery of rights" in violation of FCRA, 15 U.S.C. §§ 1681d(a)(1) & 1681g(c), *id.* at 14; (3) "failure to make proper disclosure" in violation of the California Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civ. Code § 1786 *et seq.*, *id.* at 17; and (4) "failure to make proper disclosure" in violation of the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785 *et seq. Id.* at 20.

Plaintiff's eight remaining causes of action are related to various alleged wage and hour violations committed by Defendant. Specifically, Plaintiff's eight remaining causes of action are for: (1) "failure to provide meal periods" in violation of California Labor Code §§ 204, 223, 226.7, 512, and 1198, *id.* at 22; (2) "failure to provide rest periods" in violation of California Labor Code §§ 204, 223, 226.7, and 1198, *id.* at 24; (3) "failure to pay hourly and overtime wages" in violation of California Labor Code §§ 223, 510, 1194, 1197, and 1198, *id.* at 25; (4) "failure to pay vacation wages" in violation of California Labor Code § 227.3, *id.* at 29; (5) "failure to indemnify for business expenses" in violation of California Labor Code § 2802(a), *id.* at 30; (6) "failure to provide accurate written wage statements" in violation of California Labor Code § 226, *id.*; (7)

4

1  "failure to timely pay all final wages" in violation of California Labor Code §§ 201–03, *id.* at 32;

2  and (8) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §

3  17200 *et seq.*, *id.* at 33.

Defendant filed an answer to Plaintiff's complaint in state court on October 10, 2017. *See* ECF No. 23 Ex. 2. The next day, on October 11, 2017, Defendant removed the action to this Court. *See* ECF No. 1.

On December 21, 2017, Defendant filed the instant motion to compel arbitration. *See* Mot. Plaintiff filed an opposition on February 5, 2018, *see* ECF No. 24 ("Opp."), and Defendant filed a reply on February 27, 2018, *see* ECF No. 27 ("Reply").

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2. Under Section 3 of the FAA, "a party may apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) (quoting 9 U.S.C. § 3). If all claims in litigation are subject to a valid arbitration agreement, the court may dismiss or stay the case. *See Hopkins & Carley, ALC v. Thomson Elite*, 2011 WL 1327359, at *7–8 (N.D. Cal. Apr. 6, 2011).

Interpretation of arbitration agreements generally turns on state law. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). However, the United States Supreme Court has stated that "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute," and that "[t]he court is to make this determination by applying the federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S.

5

614, 626 (1985). In the Ninth Circuit, parties may agree "to have arbitrability governed by nonfederal arbitrability law," but this requires "clear and unmistakable evidence" of the parties' intent to do so. *Cape Flattery Ltd. v. Titan Maritime*, 647 F.3d 914, 921 (9th Cir. 2011) ("Courts should apply federal arbitrability law absent 'clear and unmistakable evidence' that the parties agreed to apply non-federal arbitrability law."); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) ("For any arbitration agreement within the coverage of the FAA, the court is to make the arbitrability determination by applying the federal substantive law of arbitrability, absent clear and unmistakable evidence that the parties agreed to apply non-federal arbitrability law." (citations and brackets omitted)).

In deciding whether a dispute is arbitrable under federal law, a court must answer two questions: (1) whether the parties agreed to arbitrate; and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. *See id.* at 1130; *see also Chiron Corp. v. Ortho Diagnostic Sys.*, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). If the party seeking to compel arbitration establishes both factors, the court must compel arbitration. *Id.* "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Republic of Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

Further, parties can agree to delegate arbitrability—or "gateway" issues concerning the scope and enforceability of the arbitration agreement, and whether the dispute should go to arbitration at all—to the arbitrator. The United States Supreme Court has held that the question of "who has the power to decide arbitrability," the court or the arbitrator, "turns upon *what the parties agreed* about that matter." *First Options of Chicago v. Kaplan*, 514 U.S. 938, 943 (1995) (emphasis in original). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA

operates on this additional arbitration agreement just as it does on any other." *Rent –A–Center*, 561 U.S. at 70. The United States Supreme Court recognizes a heightened standard for an arbitrator to decide arbitrability issues under the federal law of arbitrability. *See AT&T Techs. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."); *Kaplan*, 514 U.S. at 944 ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."). Thus, an arbitrator should decide arbitrability issues only in cases where the parties "clearly and unmistakably intend to delegate the power to decide arbitrability to an arbitrator." *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law). In other words, under the federal law of arbitrability, "whether the court or the arbitrator decides arbitrability is an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise.*" *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (internal quotation marks omitted).

### III. DISCUSSION

In her opposition to Defendant's motion to compel arbitration, Plaintiff argues that her individual and class background check-related claims—the first four causes of action listed in her complaint—should not be compelled to arbitration because "the arbitration provision by its terms does not apply to" those claims. Opp. at 5. Further, although Plaintiff does not dispute that the arbitration provision applies to her wage and hour claims (the remaining eight causes of action in her complaint), Plaintiff argues that "any arbitration of the wage and hour claims must be on a classwide basis." Opp. at 2. The Court addresses each argument in turn.

#### A. Background Check-Related Claims

As discussed above, Plaintiff's first four causes of action assert that Defendant violated

7

FCRA, ICRAA, and CCRAA by requesting or procuring investigative consumer reports and consumer credit reports on Plaintiff and other employees without providing proper disclosures and summaries of rights. *See* Compl. at 10–21. Plaintiff argues that "the motion to compel arbitration of" these background check-related claims "must be denied" because "there was never any agreement [between Plaintiff and Defendant] to arbitrate" these claims. Opp. at 6–7. Specifically, Plaintiff argues that the arbitration provision does not cover Plaintiff's background check-related claims because (1) Defendant's alleged violations of FCRA, ICRAA, and CCRAA against Plaintiff "occurred before [the] arbitration agreement was in effect"; and (2) there is no indication that the arbitration provision in the Agreement between Plaintiff and Defendant applies retroactively to disputes arising out of events that occurred *before* Plaintiff entered into the Agreement. *Id.*

However, Plaintiff premises her contention that Defendant's alleged violations of FCRA, ICRAA, and CCRAA against Plaintiff "occurred before [the] arbitration agreement was in effect" on her assertion that Plaintiff signed the Agreement on December 27, 2016. *Id.* at 6. That assertion is belied by the record. Specifically, although one of Defendant's declarants, "District Manager" Johni Jennings, stated that he "witnessed [Plaintiff] initial and sign" the Agreement "*[o]n or about* December 27, 2016," ECF No. 13-1 at 2 (emphasis added), the copy of the Agreement submitted into the record plainly indicates that Plaintiff denoted on the Agreement that the date on which Plaintiff signed the Agreement was December 14, 2016. Specifically, the opening paragraph of the Agreement contains several name and date blanks, and states that "This *At-Will Employment Agreement* (hereinafter 'Agreement'), entered into and effective on this __ day of _____, 20__, is made by and between [Defendant] and _____ (hereinafter, 'Employee')." In the Agreement, these blanks are completed in handwriting and denote that the Agreement was between Defendant and "Deanna Hernandez" and was entered into

8

on day "14" of "December," "2016." Agreement at 1. Further, the last page of the Agreement contains a blank for an employee's signature and a corresponding blank for that signature's date. Those blanks are also completed in handwriting, and denote that Plaintiff signed the Agreement on "12/14/16." *Id.* at 6.

Thus, the Agreement contradicts Plaintiff's assertion that Plaintiff signed the Agreement on December 27, 2016, and instead indicates that Plaintiff signed the Agreement on December 14, 2016—the same day on which Plaintiff signed a document authorizing Defendant to obtain consumer credit reports and investigative consumer reports about Plaintiff. *See* ECF No. 24-2 at 2. Further, Plaintiff's complaint does not allege that Defendant procured or requested any of these reports on Plaintiff before Plaintiff authorized Defendant to do so. Therefore, Defendant's alleged violations of FCRA, ICRAA, and CCRAA did not occur before December 14, 2016—the date on which the Agreement (and thus the arbitration provision) came into effect. As a result, Plaintiff's background check-related claims are covered by the arbitration provision and therefore must be compelled to arbitration.

Plaintiff asserts no other grounds for opposing Defendant's request to compel all of Plaintiff's individual background check-related claims to arbitration. Additionally, Plaintiff asserts no other grounds for opposing Defendant's request to strike Plaintiff's background check-related class claims. Thus, the Court GRANTS Defendant's motion to compel arbitration of Plaintiff's individual background check-related claims, and GRANTS Defendant's request to strike Plaintiff's background check-related class claims.

**B. Wage and Hour Claims**

As discussed above, as to Plaintiff's remaining eight causes of action, which are all wage and hour claims under California law, Plaintiff concedes that the arbitration provision in the Agreement between Plainitff and Defendant "applies by its terms to" those claims. Opp. at 6.

9

Case No. 17-CV-05847-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AS TO PLAINTIFF'S INDIVIDUAL BACKGROUND CHECK-RELATED CLAIMS; GRANTING DEFENDANT'S REQUEST TO STRIKE PLAINTIFF'S BACKGROUND CHECK-RELATED CLASS CLAIMS; AND STAYING REMAINDER OF ACTION PENDING THE UNITED STATES SUPREME COURT'S DECISION IN *ERNST & YOUNG LLP V. MORRIS*

However, Plaintiff argues that "any arbitration" of her wage and hour claims "must be on a classwide basis." Opp. at 2. Plaintiff's argument proceeds in three parts. First, Plaintiff asserts that an arbitrator, and not this Court, should decide whether class arbitration is permitted for Plaintiff's wage and hour claims. Opp. at 4–5. Second, Plaintiff argues that in any event, the arbitration provision in the instant case "by its terms affirmatively permits class arbitration" of Plaintiff's wage and hour claims. *Id.* at 2–3. Third, Plaintiff asserts that if the arbitration provision "is not interpreted as permitting class arbitration" of the wage and hour claims, then the arbitration provision is unenforceable under the National Labor Relations Act ("NLRA"), as made clear by the Ninth Circuit's decision in *Morris v. Ernst & Young*, 834 F.3d 975 (9th Cir. 2016). *Id.* at 3–4. The Court addresses each part of Plaintiff's argument in turn.

### 1. Whether the Arbitrator or the Court Should Decide the Arbitrability of Plaintiff's Class Wage and Hour Claims

Plaintiff argues that because the choice-of-law provision of the Agreement "specifically provides that [the Agreement] is governed by California law," the Court should apply California law to determine whether the Agreement delegated all arbitrability issues—including whether Plaintiff's class wage and hour claims are arbitrable—to the arbitrator. Opp. at 4. Further, Plaintiff asserts that pursuant to a recent California Supreme Court decision, *Sandquist v. Lebo Automotive Inc.*, 1 Cal. 5th 233 (2016), under California law the arbitration provision in the instant case "must be construed as delegating the issue of class arbitra[bility] to the arbitrator." *Id.*

Contrary to Plaintiff's position, the Court finds that it must apply the federal law of arbitrability, and not California law, to determine all arbitrability issues in the instant case. As discussed above, under Ninth Circuit precedent, "[c]ourts should apply federal arbitrability law absent 'clear and unmistakable evidence' that the parties agreed to apply non-federal arbitrability law." *Cape Flattery*, 647 F.3d at 921. In the instant case, the Agreement's choice-of-law provision does not clearly and unmistakably show that California arbitrability law should apply

10

because it states only that "[t]his Agreement shall be governed by the laws of the State of California, without regard to that state's conflict-of-laws rules." Agreement § 8. In *Cape Flattery*, the Ninth Circuit held that similar language—a provision that "[a]ny dispute arising under this Agreement shall be settled by arbitration . . . in accordance with the English Arbitration Act 1996"—was "ambiguous concerning whether English law also applies to determine whether a given dispute is arbitrable in the first place." 647 F.3d at 921. By the same token, the choice-of-law provision in the instant case is also "ambiguous" because it does not expressly designate the law that governs arbitrability, and thus federal arbitrability law applies by default. *See also JDA Software, Inc. v. Sabert Holding Corp.*, 2017 WL 1398561, at *4 (D. Ariz. Apr. 19, 2017) (finding that a choice-of-law provision stating that "this Agreement will be governed by the internal laws of the state of Arizona, without reference to its choice of law rules" did not constitute "clear and unmistakable evidence that the parties agreed to apply non-federal arbitrability law"). As a result, the California Supreme Court's decision in *Sandquist* is irrelevant to this Court's determination of arbitrability issues. Instead, the Court must apply federal law to determine all arbitrability issues in the instant case—including the threshold issue of whether arbitrability issues are themselves arbitrable (that is, whether the Agreement delegates all arbitrability issues—including the question of whether Plaintiff's class wage and hour claims are arbitrable—to an arbitrator).

As discussed above, under the federal law of arbitrability, "whether the court or the arbitrator decides arbitrability is an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise*." *Oracle*, 724 F.3d at 1072 (internal quotation marks omitted). "Clear and unmistakable evidence of an agreement to arbitrate arbitrability 'might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (quoting *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)). Further, the Ninth Circuit has held "that incorporation of the AAA rules

11

constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130.

Applying the federal law of arbitrability to the instant case, the Court finds that there is no clear and unmistakable indication that the parties agreed to delegate any arbitrability issues—including the determination of the arbitrability of Plaintiff's class wage and hour claims—to an arbitrator. The Agreement contains neither an "express agreement" to arbitrate arbitrability nor any mention of the AAA rules. *Mohamed*, 848 F.3d at 1208; *Brennan*, 796 F.3d at 1130. Further, neither party points to any "course of conduct demonstrating assent" to delegate any arbitrability issues to an arbitrator. *Mohamed*, 848 F.3d at 1208. Finally, although Plaintiff points to the broad language of the arbitration provision stating that "[a]ny dispute that arises out of or relates to Employee's employment by [Defendant]" must be arbitrated, Agreement § 8, there is no "specific language" anywhere in the Agreement "delegating any threshold question of arbitrability to the arbitrator." *Armenta v. Staffworks, LLC*, 2017 WL 3118778, at *4 (S.D. Cal. July 21, 2017) (internal quotation marks omitted).

Accordingly, because the Court determines that the Agreement in the instant case fails to provide clear and unmistakable proof that the parties agreed to delegate arbitrability, the Court concludes that it, and not an arbitrator, must decide whether Plaintiff's class wage and hour claims are arbitrable.

**2. Whether the Agreement Permits Class Arbitration of Plaintiff's Wage and Hour Claims**

Plaintiff argues that if the Court must decide whether Plaintiff's class wage and hour claims are arbitrable, the Court "should order that the arbitration [of Plaintiff's wage and hour claims] should be on a class wide basis" because "the arbitration provision by its terms affirmatively permits class arbitration." Opp. at 2. As discussed above, because there is no "'clear and unmistakable evidence' that the parties agreed to apply non-federal arbitrability law," *Cape*

12

*Flattery*, 647 F.3d at 921, the Court must apply federal arbitrability law in order to determine whether the Agreement at issue permits class arbitration of Plaintiff's wage and hour claims.

The United States Supreme Court has held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). Thus, the United States Supreme Court concluded that parties "cannot be compelled to submit their dispute to class arbitration" when the arbitration agreement between the parties is "silent" on the issue of class arbitration. *Id.* at 687. However, the *Stolt-Nielsen* Court explained that it used the term "'silent' in the sense that [the parties] had not reached any agreement on the issue of class arbitration," and "not simply" in the sense that the arbitration agreement at issue "made no express reference to class arbitration." *Id.* at 668–69, 673. Thus, the "failure to mention class arbitration in the arbitration clause itself does not necessarily equate with the 'silence' discussed in *Stolt-Nielsen*." *Vazquez v. ServiceMaster Global Holding, Inc.*, 2011 WL 2565574, at *3 n.1 (N.D. Cal. June 29, 2011). In any event, the United States Supreme Court cautioned in *Stolt-Nielsen* that "[a]n implicit agreement to authorize class-action arbitration . . . is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate." 559 U.S. at 685.

In the instant case, the Court disagrees with Plaintiff's view that the arbitration provision at issue "affirmatively permits class arbitration." Opp. at 2. Instead, the Court finds that there is no "contractual basis" for concluding that the parties agreed to permit class arbitration because there is no indication that the parties "reached any agreement on the issue of class arbitration." *Stolt-Nielsen*, 559 U.S. at 673, 684. Neither party has submitted any evidence extrinsic to the terms of the Agreement indicating that the parties "expected or intended class arbitration to be authorized." *Armenta*, 2017 WL 3118778 at *5. Further, there is no indication from the contractual language that the parties reached any sort of agreement on class arbitrability. Indeed, in addition to not

13

Case No. 17-CV-05847-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AS TO PLAINTIFF'S INDIVIDUAL BACKGROUND CHECK-RELATED CLAIMS; GRANTING DEFENDANT'S REQUEST TO STRIKE PLAINTIFF'S BACKGROUND CHECK-RELATED CLASS CLAIMS; AND STAYING REMAINDER OF ACTION PENDING THE UNITED STATES SUPREME COURT'S DECISION IN *ERNST & YOUNG LLP V. MORRIS*

mentioning class proceedings, the terms of the arbitration provision focus exclusively on only two parties, "Employee" (Plaintiff) and "Company" (Defendant). Specifically, the arbitration provision compels to arbitration "[a]ny dispute that arises out of or relates to *Employee's employment by Company*." Agreement § 8. Such language "suggests a presumption of individual arbitration." *Armenta*, 2017 WL 3118778 at *5 ("If anything, the language in the Agreement suggests a presumption of individual arbitration. It identifies that 'any dispute or controversy which would otherwise require or allow or resort to any court or other governmental dispute resolution, *between myself and STAFFWORKS* . . . shall be submitted to and determined by binding arbitration.'"). Plaintiff argues that the terms of the arbitration provision "affirmatively permit[] class arbitration" because the arbitration provision states that there will be "no limitation on the type of relief available under the laws relating to any claim in the arbitration," and "any limitation to individual rather than class relief" would amount to a forbidden "limitation on the type of relief available." Opp. at 2 (quoting Agreement § 8). However, a class action is not itself a type of "relief." Instead, "[a] class action is a procedural device, not a claim for relief." *Clerkin v. MyLife.Com*, 2011 WL 3809912, at *3 (N.D. Cal. Aug. 29, 2011) (citing *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 331 (1980)).

For the foregoing reason, the Court finds that class arbitration of Plaintiff's wage and hour claims is not permitted by the arbitration provision in the Agreement because there is no contractual basis for concluding that the parties agreed to authorize it.

### 3. Whether the Arbitration Provision is Unenforceable Under the NLRA

Finally, Plaintiff argues that if the arbitration provision does not permit class arbitration of Plaintiff's wage and hour claims, then it is unenforceable under the NLRA, as made clear by the Ninth Circuit's recent decision in *Morris*. Opp. at 3–4. The Court first discusses *Morris* and the legal framework for when the NLRA renders an arbitration agreement unenforceable. Then, the

14

Case No. 17-CV-05847-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AS TO PLAINTIFF'S INDIVIDUAL BACKGROUND CHECK-RELATED CLAIMS; GRANTING DEFENDANT'S REQUEST TO STRIKE PLAINTIFF'S BACKGROUND CHECK-RELATED CLASS CLAIMS; AND STAYING REMAINDER OF ACTION PENDING THE UNITED STATES SUPREME COURT'S DECISION IN *ERNST & YOUNG LLP V. MORRIS*

Court addresses whether the NLRA causes the arbitration provision in the instant case to be unenforceable to the extent it applies to Plaintiff's wage and hour claims. Finally, the Court discusses whether a stay of the wage and hour portion of Plaintiff's action pending the United States Supreme Court's resolution of *Morris* is appropriate.

### a. Legal Framework

Section 7 of the NLRA, 29 U.S.C. 151 *et seq.*, provides employees the right "to engage in . . . concerted activities for the purpose of . . . mutual aid or protection," *D.R. Horton*, 357 NLRB No. 184 (2012), which includes the right to "seek to improve working conditions through resort to administrative and judicial forums," *Eastex, Inc. v. NLRB*, 437 U.S. 556, 566 (1978). In *Morris*, the Ninth Circuit held that the right to engage in concerted activity "is the essential, substantive right established by the NLRA." 834 F.3d at 980. As a result, the *Morris* court held that an arbitration agreement that requires an employee to "pursue work-related claims individually and, no matter the outcome, [to be] bound by the result . . . is the 'very antithesis' of § 7's substantive right to pursue concerted work-related legal claims." *Id.* at 983–85 (citing *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1155 (7th Cir. 2016)). The *Morris* court specifically addressed a "concerted action waiver"—a waiver of the right to bring concerted legal claims, i.e., collective or class action claims, in any forum—in an arbitration agreement, and held that such concerted action waivers are unenforceable because they violate the right to engage in concerted activity under the NLRA. *Id.* The *Morris* court held that a provision in an arbitration agreement is an unenforceable concerted action waiver where the terms of the provision (1) "require[] that employees only use arbitration" to pursue work-related claims against their employer; and (2) "prevent[ ] concerted activity by employees in [those] arbitration proceedings." *Id.* at 983–84; *see also Coppernoll v. Hamcor, Inc.*, 2017 WL 446315, at *1 (N.D. Cal. Jan. 17, 2017) ("Because all legal claims had to be arbitrated and arbitration could only be conducted individually, this was an unenforceable

15

Case No. 17-CV-05847-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AS TO PLAINTIFF'S INDIVIDUAL BACKGROUND CHECK-RELATED CLAIMS; GRANTING DEFENDANT'S REQUEST TO STRIKE PLAINTIFF'S BACKGROUND CHECK-RELATED CLASS CLAIMS; AND STAYING REMAINDER OF ACTION PENDING THE UNITED STATES SUPREME COURT'S DECISION IN *ERNST & YOUNG LLP V. MORRIS*

concerted action waiver.").

*Morris* recognized that an arbitration agreement that precludes the ability to bring "concerted legal actions" may still be enforceable where an employer provides a "meaningful opportunity" to opt out of the arbitration agreement or its concerted action waiver. *Morris*, 834 F.3d at 982 n.4 (citing *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1076 (9th Cir. 2014)); *see also Echevarria v. Aerotek, Inc.*, 2017 WL 24877, at *2 (N.D. Cal. Jan. 3, 2017) ("'[A]n employer does not provide employees a meaningful opportunity to opt out of an arbitration agreement when it fails to provide any opt-out procedures and does not otherwise explain to employees that they may opt out.'") (quoting *Gonzalez v. Ceva Logistics U.S., Inc.*, 2016 WL 6427866, at *5 (N.D. Cal. Oct. 31, 2016)). However, neither party has presented any evidence here that Plaintiff was provided an opportunity to opt out of the arbitration provision. Nor does the arbitration provision itself contain a procedure for opting out. Accordingly, this exception to the unenforceability of concerted action waivers does not apply to the instant case.

### b. Whether the NLRA Causes the Arbitration Provision in the Instant Case to be Unenforceable

Under *Morris*, the arbitration provision in the instant case, as applied to Plaintiff's wage and hour claims, amounts to a violation of the NLRA and is therefore unenforceable. Specifically, as discussed above, the *Morris* court held that an arbitration provision constitutes an unenforceable concerted action waiver if it (1) "require[s] that employees only use arbitration" to pursue work-related claims against their employer; and (2) "prevents concerted activity by employees in [those] arbitration proceedings." *Id.* at 983–84. The arbitration provision in the instant case satisfies both of these criteria. First, the arbitration provision compels "[a]ny dispute that arises out of or relates to Employee's employment with Company"—which clearly encapsulates Plaintiff's wage and hour claims—to arbitration. Agreement § 8. Second, as explained above, the arbitration provision does not permit arbitration of Plaintiff's class wage and

16

Case No. 17-CV-05847-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AS TO PLAINTIFF'S INDIVIDUAL BACKGROUND CHECK-RELATED CLAIMS; GRANTING DEFENDANT'S REQUEST TO STRIKE PLAINTIFF'S BACKGROUND CHECK-RELATED CLASS CLAIMS; AND STAYING REMAINDER OF ACTION PENDING THE UNITED STATES SUPREME COURT'S DECISION IN *ERNST & YOUNG LLP V. MORRIS*

hour claims against Defendant.

Defendant's only response to Plaintiff's *Morris* argument is that while *Morris* concerned an explicit class action waiver provision, "the agreement at issue [in the instant case] does not contain an explicit class action waiver provision and thus is plainly distinguishable from *Morris*." Reply at 3. However, this is a distinction without a difference. Because Defendant "is seeking to not only compel arbitration," but also to dismiss Plaintiff's class wage and hour claims, "Defendant is seeking to obtain the same result that was forbidden in *Morris*—an order (1) limiting Plaintiff['s wage and hour claims] to arbitration[;] and (2) precluding her from engaging in concerted activity in arbitration." *Armenta*, 2017 WL 3118778, at *5–*6 (rejecting an identical attempt to distinguish *Morris* and stating that "the Court is unpersuaded by Defendant's initial argument that the outcome in this case should be different than *Morris* simply because the Agreement does not contain an express concerted action waiver").

Accordingly, under the currently-binding Ninth Circuit decision in *Morris*, the arbitration provision in the instant case, as applied to Plaintiff's wage and hour claims, violates the NLRA and is therefore unenforceable.

### c. Whether a Stay Pending the United States Supreme Court's Decision in *Ernst & Young, LLP v. Morris* is Appropriate

Although the arbitration provision is unenforceable under *Morris*, the United States Supreme Court granted certiorari in *Morris* on January 13, 2017. *See Ernst & Young, LLP v. Morris*, 137 S. Ct. 809 (2017) ("Petition for writ of certiorari to the United States Court of Appeals for the Ninth Circuit granted."). The question before the United States Supreme Court is "[w]hether an agreement that requires an employer and an employee to resolve employment-related disputes through individual arbitration, and waive class and collective proceedings, is enforceable under the Federal Arbitration Act, notwithstanding the provisions of the National

17
Case No. 17-CV-05847-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AS TO PLAINTIFF'S INDIVIDUAL BACKGROUND CHECK-RELATED CLAIMS; GRANTING DEFENDANT'S REQUEST TO STRIKE PLAINTIFF'S BACKGROUND CHECK-RELATED CLASS CLAIMS; AND STAYING REMAINDER OF ACTION PENDING THE UNITED STATES SUPREME COURT'S DECISION IN *ERNST & YOUNG LLP V. MORRIS*

Labor Relations Act." *See Ernst & Young, LLP v. Morris*, U.S. Sup. Ct. Case No. 16-300.[1] The United States Supreme Court heard oral argument in *Morris* on October 2, 2017. Thus, "a decision [is] likely to be issued soon," and that decision may reverse the Ninth Circuit's holding in *Morris*. *Hughes v. S.A.W. Entertainment, LTD*, 2017 WL 6450485, at *2 (N.D. Cal. Dec. 18, 2017).

Because the United States Supreme Court's ruling in *Morris* is imminent and may reverse the Ninth Circuit's holding, many courts have granted stays pending the Supreme Court's *Morris* ruling. *See Hughes*, 2017 WL 6450485 at *10; *Bui v. Northrop Grumman Sys. Corp.*, 2017 WL 5256739, at *3 (S.D. Cal. Nov. 9, 2017) (staying employment class action where motion to compel arbitration was pending until after the Supreme Court issues a ruling in *Morris*); *Conde v. Open Door Mktg., LLC*, 2017 WL 5172271, at *8 (N.D. Cal. Nov. 8, 2017) (same); *Robledo v. Randstad US, L.P.*, 2017 WL 4934205, at *6 (N.D. Cal. Nov. 1, 2017) (same); *Bankwitz v. Ecolab, Inc.*, 2017 WL 4642284, at *6 (N.D. Cal. Oct. 17, 2017) (same).

This Court also concludes that a stay of the wage and hour portion of Plaintiff's action pending the United States Supreme Court's resolution of *Morris* is appropriate. "A district court has the inherent power to stay its proceedings. This power to stay is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Gustavson v. Mars, Inc.*, 2014 WL 6986421, at *2 (N.D. Cal. Dec. 10, 2014) (quoting *Fuller v. Amerigas Propane, Inc.*, 2009 WL 2390358, at *1 (N.D. Cal. Aug. 3, 2009)) (internal quotation marks omitted). In considering whether to exercise its discretion to grant a stay, a court should weigh three factors: "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in

---

[1] The United States Supreme Court granted certiorari in two other cases to address the same question at issue in *Morris*, namely, *Epic Systems Corp. v. Lewis*, U.S. Sup. Ct. Case No. 16-285, and *NLRB v. Murphy Oil USA, Inc.*, U.S. Sup. Ct. Case No. 16-307.

18
Case No. 17-CV-05847-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AS TO PLAINTIFF'S INDIVIDUAL BACKGROUND CHECK-RELATED CLAIMS; GRANTING DEFENDANT'S REQUEST TO STRIKE PLAINTIFF'S BACKGROUND CHECK-RELATED CLASS CLAIMS; AND STAYING REMAINDER OF ACTION PENDING THE UNITED STATES SUPREME COURT'S DECISION IN *ERNST & YOUNG LLP V. MORRIS*

being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The Court refers to these factors as the *Landis* factors because they were drawn from the Supreme Court's decision in *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936).

As to the first *Landis* factor, the Court finds that the "possible damage [to Plaintiff] which may result from the granting of a stay" is negligible. *CMAX*, 300 F.2d at 268. This case is still at a very early stage, and although in certain circumstances granting a stay "risks a loss of evidence," "[t]his potential harm is [] directly mitigated [in the instant case] by the short duration of the [] stay." *Robledo*, 2017 WL 4934205 at *3. Specifically, because *Morris* "has already been fully briefed" and was argued in the United States Supreme Court on October 2, 2017, and because "[t]he only event that the Parties and the Court are waiting for is the decision itself," a stay pending the Supreme Court's ruling in *Morris* "will likely last no more than a few months while the Supreme Court writes its opinion." *Id.*

As to the second *Landis* factor, "the hardship or inequity which [Defendant] may suffer" in the absence of a stay is considerable. *CMAX*, 300 F.2d at 268. Without a stay, Defendant "would be required to defend a large class action and undergo discovery which could be rendered moot if the Supreme Court reverse the Ninth Circuit." *Robledo*, 2017 WL 4934205 at *4.

Finally, as to the third *Landis* factor, staying the wage and hour portion of Plaintiff's action would promote "the orderly course of justice." *CMAX*, 300 F.2d at 268. Under currently-binding Ninth Circuit precedent in *Morris*, the wage and hour portion of Plaintiff's action must proceed in this Court because the arbitration provision, as applied to Plaintiff's wage and hour claims, is unenforceable. However, the United States Supreme Court's decision in *Morris* may reverse the Ninth Circuit and hold that the arbitration provision is enforceable, which would then require the

19

Case No. 17-CV-05847-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AS TO PLAINTIFF'S INDIVIDUAL BACKGROUND CHECK-RELATED CLAIMS; GRANTING DEFENDANT'S REQUEST TO STRIKE PLAINTIFF'S BACKGROUND CHECK-RELATED CLASS CLAIMS; AND STAYING REMAINDER OF ACTION PENDING THE UNITED STATES SUPREME COURT'S DECISION IN *ERNST & YOUNG LLP V. MORRIS*

Court to dismiss Plaintiff's class wage and hour claims and compel Plaintiff's individual wage and hour claims to arbitration. Thus, a stay would conserve judicial resources that might otherwise be unnecessarily expended litigating issues in this Court. "Ultimately, it would prove to be 'an extraordinary waste of time and money' to continue litigating this case 'only to have to do it all again because the experts, the parties and the Court were proceeding under a legal framework that the Supreme Court determined did not apply.'" *Robledo*, 2017 WL 4934205 at *5 (quoting *Meijer, Inc. v. Abbott Labs.*, 2009 WL 723882, at *4 (N.D. Cal. Mar. 18, 2009) (alteration adopted)).

Accordingly, because all three *Landis* factors weigh in favor of stay, the Court concludes that a stay of the wage and hour portion of Plaintiff's action pending the Supreme Court's resolution of *Morris* is warranted.

## IV. CONCLUSION

For the foregoing reasons, the Court (1) GRANTS Defendant's motion to compel arbitration of Plaintiff's individual background check-related claims; (2) GRANTS Defendant's request to strike Plaintiff's background check-related class claims; and (3) STAYS the remainder of Plaintiff's action pending the United States Supreme Court's resolution of *Ernst & Young LLP v. Morris*. Within seven days of the United States Supreme Court's decision, the parties shall, by a joint filing, inform this Court of the decision and advise this Court as to how the parties wish to proceed. The Clerk shall administratively close the file. This is a purely internal procedure that does not affect the rights of the parties.

**IT IS SO ORDERED.**

Dated: April 2, 2018

_____
LUCY H. KOH
United States District Judge

20

Case No. 17-CV-05847-LHK
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AS TO PLAINTIFF'S INDIVIDUAL BACKGROUND CHECK-RELATED CLAIMS; GRANTING DEFENDANT'S REQUEST TO STRIKE PLAINTIFF'S BACKGROUND CHECK-RELATED CLASS CLAIMS; AND STAYING REMAINDER OF ACTION PENDING THE UNITED STATES SUPREME COURT'S DECISION IN *ERNST & YOUNG LLP V. MORRIS*